Webster Investors, Inc., successor by merger to Webster Investment Company, Inc. v. Commissioner.
Webster Investors, Inc. v. Commissioner
Docket No. 71771.
United States Tax Court
T.C. Memo 1960-74; 1960 Tax Ct. Memo LEXIS 217; 19 T.C.M. (CCH) 396; T.C.M. (RIA) 60074; April 13, 1960
*217 David G. Sacks, Esq., for the petitioner. Robert S. Bevan, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined a deficiency of $27,109.19 for the taxable year ended December 31, 1954. The only issue for decision is whether the Commissioner properly disallowed $149,300 which was claimed as a carryover of a capital loss resulting from the sale of the cigar brand name "Henrietta" in the year 1952. Findings of Fact Some of the facts are stipulated, are so found, and the stipulation of facts is included herein by this reference. Petitioner is a corporation organized on March 23, 1953, under the laws of the State of Delaware. It is successor by merger to Webster Investment Company, Inc. which was organized on February 3, 1911, under the laws of the Commonwealth of Pennsylvania as The Ellis Tobacco Company. Its name was changed on a number of occasions and on April 30, 1956, the corporation, then known as Webster Investment Company, Inc., was merged into petitioner. Petitioner and its corporate predecessor are referred to herein as "taxpayer". The income tax returns here involved were filed with *218 the district director of internal revenue, lower Manhattan district. From about 1850 to February 3, 1916, a partnership, Otto Eisenlohr & Bros., and its predecessors manufactured and sold cigars in Philadelphia and elsewhere. By 1899 the partnership had three factories and only three executive employees. By the end of 1915 it had 22 cigar factories, a number of stripping warehouses and about 25 office employees, exclusive of the partners and their secretaries. The great growth of the business was in part due to the use of distributors who had well defined territorial rights and were somewhat restricted in handling competitive merchandise. The partnership had excellent management and the Eisenlohr name was well known in the trade. The profits of the partnership were as follows (without cents): 1912
$892,471
1913
$890,154
1914
$671,629
1915
$564,907
1916
$758,904
Brand names are very important in the tobacco industry. In addition to other brand names the partnership had among its assets the cigar brand names "Cinco" and "Herietta". Cinco cigars produced about 90 per cent of the partnership sales and Henrietta about 5 per cent in 1916. The sales of Henrietta *219 cigars were profitable as were those of Cinco. Both brand names had market value in 1916. On February 3, 1916, the partnership business was taken over and succeeded to by taxpayer which issued 30,000 shares of 7 per cent cumulative preferred stock, par value $100 per share and 60,000 shares of common stock, par value $100 per share, in exchange for all of the partnership assets. The entire organization of the partnership, including the physical assets along with the manufacturing and selling personnel was taken over by taxpayer. As a result of this transaction taxpayer succeeded, among others, to the brand and trade names of Cinco and Henrietta. Henrietta cigars were first manufactured by the partnership in about June 1891. Taxpayer continuously manufactured Henriettas from February 3, 1916 to March 1, 1952, except for the period of a year or so during the second world war. Taxpayer never abandoned the brand name Henrietta. The fair market value of the tangible assets acquired by taxpayer from the partnership on February 3, 1916, was $4,000,000. The fair market value of the intangible assets acquired in the same transaction was not less than $3,074,907. As of February 3, 1916, a *220 substantial portion of the value of the intangible assets of the partnership was attributable to the brand names Cinco and Henrietta. On January 21, 1952, taxpayer sold all its right, title, and interest in and to the brand name Henrietta for $700. Ultimate Conclusion On February 3, 1916, the brand name Henrietta had a fair market value of $75,000. Opinion In its 1952 income tax return taxpayer ascribed a value of $150,000 to the brand name Henrietta and claimed a capital loss carryover of $149,300 to 1954. The Commissioner determined that the capital loss carryover should be reduced by the full amount claimed. The parties filed seriatim briefs and in narrowing the problem, the Commissioner states that he does not take issue with petitioner's contention that the brand name Henrietta was a capital asset, or that the name was sold, and he agrees that the basis for the name was its fair market value on February 3, 1916. He does take issue with the figure of $150,000 as the value on that date and argues that petitioner has not met its burden of proof on the question. The question is essentially one of fact and our ultimate finding disposes of it. . *221 Even so, the case is not without its difficulties. The Commissioner's determination would ascribe no value at all to the name Henrietta. On the other hand, petitioner asserts it had a fair market value of $150,000 in 1916. We think the Commissioner was clearly in error. We further think the petitioner's valuation is too high. As the Court of Appeals for the Second Circuit stated in , (affirming a Memorandum Opinion of this Court [): "For finding market value is, after all, something for judgment, experience, and reason on the part of the trier, and does not lend itself to dissection and separate evaluation. * * *" We will therefore not attempt to dissect and separately evaluate the factors underlying our finding that $75,000 was the sought for value. The transaction before us took place more than 40 years ago. Many of the books and records are lost. Nevertheless, auditors reports for the early years are in evidence and the record contains testimony by witnesses experienced in the tobacco industry and familiar with the partnership's cigar business. We think the record fairly shows that *222 the brand name Henrietta was promoted by the partnership, that the cigars bearing that name were well received by the trade and the public, that the sales of the cigars were profitable, and that the brand name had value in 1916. We also think that the record establishes that the intangibles or good will transferred by the partnership to taxpayer in 1916 had a value of some $3,000,000, substantially all of which petitioner would have us find to be ascribable to the brand names Cinco and Henrietta, and since Henrietta's sales produced about 5 per cent of the business, petitioner also contends this brand name had a value of $150,000. Here petitioner goes too far. As we see it, this intangible value of the business included other elements of substantial value beside the brand names. The partnership had an established business, trade outlets, well located factories, good management, and a well known name itself. All of these things had value and were transferred to taxpayer. The business was carried on after the transfer by the same personnel. We think it would be wrong to say that substantially all of the $3,000,000 value of the intangibles is attributable to the two brand names. The *223 parties made no allocation of values among the intangibles in the transaction transferring the partnership assets to petitioner and that further complicates the problem. In the nature of things certainty is here impossible. However, applying our best judgment to the facts of record we find that the brand name Henrietta had a value of $75,000 on February 3, 1916. Decision will be entered under Rule 50.